## ANDREW THOMPSON v. ST. LOUIS RIVER DAM & IMPROVEMENT COMPANY.[1]

February 10, 1911.

Nos. 16,888—(233).

**Negligence in operation of dam — change of venue — evidence.**

Action by a homesteader in possession of his claim to recover damages for loss of his crops thereon, alleged to have been caused by the negligence of the defendant in maintaining, operating, and supervising its dam in the river, whereby its waters were cast upon the land in destructive quantities.   Verdict for plaintiff.   *Held*, that the trial court did not err in denying defendant's motion for a change of place of trial, nor in its rulings as to the admission of evidence, nor in its charge, and, further, that the verdict is sustained by the evidence.

Action in the district court for St. Louis county to recover $200 for the destruction of certain crops and for injury to plaintiff's clearing by the deposit of brush, logs and accumulations of various descriptions, which it became necessary to remove to prepare the

[1]Reported in 129 N. W. 780.

land for subsequent cropping and use. The answer alleged, among other matters, that if any part of the land described was at the time therein set out submerged or overflowed to any extent, the same resulted solely from unusual, extraordinary and unprecedented rains which caused the St. Louis river and all the streams in that region to overflow their banks, and that the rains and freshets could not have been anticipated or averted. The reply was a general denial. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for $151.75, and answered a special question to the effect that the east gate in defendant's dam became closed by reason of the appliances by which the gate was kept open having become defective and out of repair. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*William B. Phelps,* for appellant.

*Arnold & Pickering,* for respondent.

START, C. J.

The plaintiff settled upon, improved, and was, at all times here material, in possession of the land described in the complaint, the fee title to which was in the United States, and upon which he had growing crops. The defendant owned and maintained a dam in the St. Louis river, in the vicinity of plaintiff's claim, for the purpose of facilitating the driving of logs in the stream. This action was brought in the district court of the county of St. Louis to recover damages to the crops of the plaintiff, which the complaint alleged were caused by the negligence of the defendant in maintaining and operating its dam, and in negligently failing to properly care for and supervise the same, whereby the water of the river was diverted from its natural course and thrown in destructive quantities upon the land so occupied by the plaintiff. The answer put in issue the allegations of the complaint as to the plaintiff's possession, the defendant's negligence, and resulting damages. There was a verdict for the plaintiff for $151.75. The defendant appealed from an order denying its motion for a new trial.

The first contention of the defendant is that the trial court erred

in denying its motion, made after the jury were impaneled and before any evidence was received, to change the place of trial from Virginia to Duluth, for the reason that a trial involved the title to real property. The motion was based on Laws 1909, p. 115, c. 126, § 1, providing for the holding of general terms of the district court at Virginia, but that all actions involving the title to real estate should be tried at Duluth. Waiving the question whether the motion could properly be made at the time it was made, we are of the opinion that its denial was not reversible error, for the action was not one necessarily involving the title to real estate on the face of the pleadings, for its gist is an injury to the possession only. Again, the undisputed evidence, which was received without objection, shows that the plaintiff was at the time of the trial, and had been for three years, in the actual possession of the land, which belonged to the United States, under a homestead filing and settlement thereon, and that he had made improvements thereon of the value of at least $1,500. The trial involved no controversy as to the title to real estate, and in no event could the ruling be held to be reversible error.

On the trial the plaintiff testified to the effect that about one acre of the land, upon which he had turnips growing, was submerged by the water, and the crop destroyed, and that the water when it subsided left "limbs, bark, and stuff" thereon. He also testified, over the objection and exception of the defendant, as to the time and labor expended in clearing the land of the débris that was brought thereon by the water, in order to get ready for the next year's crops. The reception of this evidence is urged as error, as an attempt to show injury to the land itself; that is, as we understand counsel, to the freehold. The fair import of the record is that the evidence tended to show an injury only to the plaintiff's possession. The court did not err in receiving the evidence, nor in permitting the plaintiff to show the damage by the water to his growing crop of timothy and clover.

The defendant also urges that the verdict is not sustained by the evidence. We are of the opinion that the evidence is sufficient to support a finding that the defendant's alleged negligence was the

cause of the overflow of the land and to sustain the verdict. This brings us to a consideration of the most serious question presented by the record. Did the court commit reversible error in its instructions to the jury, or in its refusal to give instructions requested by the defendant?

Eleven separate alleged errors are assigned in this connection. It is quite clear from the record that the court did not err in refusing the requested instructions, for they either failed to state accurately the law applicable to the case made by the evidence or were substantially covered by the general charge. The errors claimed in the charge of the court as given are to the effect that it left the jury to find for the plaintiff without proof of negligence on its part; that is, that it was an insurer of the dam against all injuries that might result therefrom. There was evidence tending to show that the appliances, whereby the gates in the dam, when raised, were kept in position, were defective and out of repair; that the east gate was so insecurely fastened by the defendant's agent that it dropped and closed, whereby the water in the river backed up and submerged the land occupied by the plaintiff, and caused the injuries complained of.

The trial court instructed the jury that if they found such to have been the case the defendant was liable, and concluded this part of the charge with these words: "This would be true, regardless of whether the defendant was negligent in the manner of maintaining or operating its dam." This was followed by the instruction: "If you find that the east gate of the defendant's dam was lowered or closed by some person without authority from or acting for the defendant (in which case he would be a mere trespasser), and you further find that the defendant in the exercise of ordinary care knew, or ought to have known, that the gate was closed prior to the injury to the plaintiff's crops, and should have raised or opened the same prior to the injury to the plaintiff's crops by overflowing the land, then the defendant is liable. *  *  * The burden of proving that the east gate was closed by reason of the defective condition or want of repair of the apparatus by which it was held open is upon the plaintiff, and the burden of proving that

the defendant was negligent and that its negligence was the proxi-
mate cause of the injury to the plaintiff's crops, is also upon the
plaintiff. Both of these propositions the plaintiff must prove by
a fair preponderance of the evidence."

It would seem that the court had in mind a distinction between
operating or maintaining the dam, and permitting the appliances,
which held the gates in position when raised, to become defective,
and in insecurely fastening the gates. However this may be, we
are of the opinion that the charge, considered as a whole, contains
no reversible error. No exceptions were taken to the charge until
a motion for a new trial was made.

Order affirmed.

JAGGARD, J., took no part.